IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MIRANDA SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:18CV747 |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Miranda Simpson ("Plaintiff") brought this action pursuant to Sections 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed her application for Disability Insurance Benefits on January 29, 2014, alleging a disability onset date of June 8, 2013. (Tr. at 118, 296-304.)[2] Her applications were denied initially (Tr. at 92-102) and upon reconsideration (Tr. at 103-14).

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 153-54.) Plaintiff, along with her attorney and an impartial vocational expert, attended the hearing on July 13, 2016 (Tr. at 59), and also attended a supplemental hearing on September 9, 2016 (Tr. at 53). After these hearings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 126.) However, on March 31, 2017, the Appeals Council vacated the ALJ's decision and remanded the case for another hearing to address several errors. (Tr. at 132-34.) Accordingly, Plaintiff appeared and testified at another administrative hearing on July 21, 2017. (Tr. at 15.) On November 24, 2017, the ALJ again determined that Plaintiff was not disabled within the meaning of the Act, and on July 6, 2018, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ("RFC")." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since June 8, 2013, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Fibromyalgia, chronic fatigue, Ehlers Danlos Syndrome, knee and wrist arthritis[.]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with additional limitations. Specifically, the ALJ found that Plaintiff

> can sit, stand, and walk for six hours. In addition, [Plaintiff] can frequently handle, climb, balance, and stoop. [Plaintiff] can occasionally kneel, crouch, and crawl. [She] is capable of performing simple routine tasks.

(Tr. at 19.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff was unable to perform any of her past relevant work. (Tr. at 24-25.) However, at step five of the analysis, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 25-26.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises three challenges to the ALJ's decision. Specifically, she contends that the ALJ erred by (1) failing to evaluate Plaintiff's Ehlers-Danlos Syndrome ("EDS") under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 14.06 (hereinafter "Listing 14.06"), the listing for connective tissue disease, (2) failing to properly weigh the opinions of Dr. Alan Spanos, and (3) "failing to adequately account for Plaintiff's well documented chronic fatigue and pain when assessing the [RFC]." (Pl.'s Br. [Doc. #10] at 1.) After a thorough review of the record, the Court agrees that Plaintiff's first challenge requires remand, and the Court therefore need not reach the remaining contentions.

A. Listing 14.06

Plaintiff first contends that the ALJ erred by failing to expressly evaluate whether her EDS met or equaled Listing 14.06. At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in the regulations at 20 CFR Part 404, Subpart P, Appendix 1. In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir.2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the

decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

In the present case, the ALJ did not specifically mention Listing 14.06. Instead, he noted at step three that Plaintiff's "impairments do not meet or equal any listing requirements for any 1.00 or 14.00 Listing." (Tr. at 19.) He then proceeded to discuss whether Plaintiff's fibromyalgia "medically equals Listing 14.09D for inflammatory arthritis," but found that it did not meet either this listing or any of the 1.00 or 4.00 listings. Specifically, the ALJ noted that, with regard to Listing 14.09D, Plaintiff did not demonstrate "evidence of (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least 11 positive tender points on physical examination found bilaterally in [sic] both above and below the waist that are determined by a physician performing digital palpitation with an appropriate force of 9 pounds; *and* (3) evidence of exclusion of other disorders that could cause the symptoms or signs." (Tr. at 19.) The ALJ further found that Plaintiff's "arthritis . . . failed to meet the listing for 14.09 because the record does not demonstrate persistent inflammation and or persistent deformity or one or more major peripheral joint[s] in each upper extremity resulting in the inability to perform fine and gross movements effectively." (Tr. at 19.)

Notably, none of the factors the ALJ discussed in relation to Listing 14.09 are requirements of Listing 14.06. To meet Listing 14.06, applicable to "Undifferentiated and mixed connective tissue disease," a claimant must show the following:

> A. Involvement of two or more organs/body systems, with:
>    1. One of the organs/body systems involved to at least a moderate level of severity; and

8

            2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
  or
B. Repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
            1. Limitation of activities of daily living.
            2. Limitation in maintaining social functioning.
            3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R., Part 404, Subpt. P, Appx. 1, § 14.06.

Plaintiff contends that her EDS, a connective tissue disease, meets Listing 14.06(A) and that the ALJ erred by failing to specifically consider and discuss this possibility. In particular, Plaintiff argues that her EDS involved two or more body systems, including her musculoskeletal and gastrointestinal systems, with her ongoing, musculoskeletal pain qualifying as involvement of one body system "to at least a moderate level of severity."[5] Plaintiff further alleges that the record documents severe fatigue and malaise sufficient to meet paragraph (A)(2) of the listing.

Defendant, correctly noting that Plaintiff bears the burden at step three of the sequential analysis, challenges Plaintiff's ability to meet *any* of the requirements of Listing 14.06(A). With regard to the involvement of two or more body systems, Defendant acknowledges that Plaintiff suffered from musculoskeletal impairments. However, Defendant contends that "the record simply does not support [Plaintiff's] claim" that her EDS also involved her gastrointestinal system. (Def.'s Br. [Doc. #12] at 12.) In support of this

---

[5] In the listings for immune system disorders, "[s]evere means medical severity as used in the medical community." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 14.00(C)(12).

9

contention, Defendant argues that "Plaintiff did not identify gastrointestinal issues when she applied for benefits (Tr. 327), she received virtually no specific treatment for gastrointestinal issues (Tr. 449-1526), and the ALJ determined Plaintiff's irritable bowel syndrome was not a severe medically determinable impairment (Tr. 18)." (Id. at 12-13.) Nevertheless, there is no indication in Listing 14.06(A) that in order to qualify under that listing, the impairment involving a second body system must be severe. Moreover, the ALJ's decision specifically recounted Plaintiff's allegation that she was "disabled per this Agency's definition due to severe medically determinable impairments of fatigue, fibromyalgia, and IBS" (Tr. at 21) and noted that Plaintiff's medical records contained complaints of IBS (Tr. at 18). Perhaps most significantly, Dr. Spanos, who treated Plaintiff and limits his practice to EDS patients, explained that Plaintiff had "multiple gastrointestinal symptoms" associated with EDS. (Tr. at 1487.) Specifically, Dr. Spanos noted that Plaintiff suffered from EDS- Hypermobility Type, and that her EDS-HT includes:

> ●Widespread large and small hypermobile joints, some of which sublux and many of which are painful. . . .
> ●She also has widespread pain, which in EDS is mainly neuropathic (the cause is unsure). This should not be labelled 'fibromyalgia' as that diagnosis leads to treatments that are inappropriate for people with EDS.
> ●Hypersomnia since childhood.
> ●Low stamina (i.e. reduced activity tolerance). . . .
> ●Multiple organic, and functional disorders along the length of the GI tract, from GERD to hemorrhoids.
> ●Anxiety . . .
> ●Menorrhagia, dysmenorrhea, and intermenstrual pelvic pain; pelvic floor dyskinesia may account for some of this, as well as endometriosis.

(Tr. at 558.) Thus, there is clearly a "fair amount of evidence" that Plaintiff's connective tissue disease involved two or more organs or body systems, including musculoskeletal, gastrointestinal, and mental disorders, relevant to the first requirement of Listing 14.06(A), yet

the ALJ failed to address that possibility at all. See Radford v. Colvin, 734 F.3d at 295 (4th Cir. 2013).

Defendant next argues that, "[e]ven assuming Plaintiff could establish the involvement of two or more organs/body systems, . . . she did not prove one of those organ/body systems was involved to at least a moderate level of severity" as required by Listing 14.06(A)(1). Defendant goes on to cite multiple occasions in which the medical record reflects "normal" musculoskeletal findings. (Def.'s Br. at 13-14.) However, Defendant fails to reconcile this argument with the ALJ's RFC finding that Plaintiff's impairments, all of which are musculoskeletal in nature, reduced her exertional capacity to light work. This fact alone indicates at least a moderate level of severity, as required by the listing. In addition, the ALJ's decision contains little analysis of Plaintiff's more than one thousand pages of medical treatment notes, which overwhelmingly deal with Plaintiff's ongoing musculoskeletal pain and fatigue during the time at issue. The ALJ instead appears to minimize these findings by (1) selectively citing to the record and (2) relying on Plaintiff's ability to perform a number of daily activities, primarily caring for her children, albeit on a more limited basis than before her alleged onset date.

Defendant also contends that Plaintiff's "claim also fails because she did not establish '[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).'" (Def.'s Br. at 15) (citing 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 14.06(A)(2)). As defined in the regulations, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function," while "[m]alaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result

11

in significantly reduced physical activity or mental function." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 14.00(C)(2). Again, as discussed above, Plaintiff's lengthy medical record is replete with complaints of fatigue and malaise which, along with her musculoskeletal pain, led her to quit her job and significantly reduce her daily activities. As noted above, Plaintiff's treating physician specifically noted that her EDS involved both low stamina/reduced activity and widespread pain. (Tr. at 558-62.) Dr. Stanos further opined that Plaintiff's EDS was "an inherited condition with several features in different body systems" including hypermobile joints, widespread pain, hypersomnia, prolonged exhaustion that meets the criteria for chronic fatigue syndrome, anxiety, and multiple gastrointestinal symptoms, all associated with EDS. (Tr. at 1487.) Moreover, the ALJ included chronic fatigue syndrome among Plaintiff's severe impairments at step two, indicating that fatigue, by definition, significantly limited Plaintiff's ability to perform basic work activities. (Tr. at 18.) The ALJ ignored, without explanation, this evidence that Plaintiff's fatigue and widespread pain arguably met part (A)(2) of Listing 14.06.[6]

Finally, the Court notes that this is not a case where the ALJ provide only a cursory explanation at step three but then further considered the evidence and analyzed the issue at

---

[6] The Commissioner's brief includes an extended analysis of whether Plaintiff in fact meets Listing 14.06. However, such an analysis is beyond the scope of this Court's review. Where, as here, the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing, but the ALJ fails to analyze the matter, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); see also Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is. limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions.... Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.... If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis' ").

subsequent steps, such that the conclusion is supported by substantial evidence when the decision is viewed as a whole. Instead, it appears that the ALJ's failure to adequately analyze the medical evidence with regard to the listings is indicative of a more pervasive problem with his analysis of Plaintiff's EDS and the medical opinion evidence. Indeed, as noted above, the ALJ issued a prior determination that was reversed and remanded by the Appeals Council because the original decision did not "contain an evaluation of [Plaintiff's] Ehlers Danlos Syndrome." (Tr. at 133.) In the remand order the Appeals Council directed the ALJ to evaluate Plaintiff's EDS in accordance with 20 C.F.R. § 404.1520, and if necessary, "obtain evidence from a medical expert to clarify the nature and severity of this impairment." (Tr. at 134.) In particular, the Appeals Council noted as follows:

> The evidence shows that [Plaintiff] was diagnosed with EDS by Alan Spanos, M.D., a pain specialist with experience treating this disorder. The EDS diagnosis was also confirmed by Sean Dawson, M.D., who conducted a consultative examination on July 30, 2016. . . . As Dr. Spanos explains, EDS is an inherited condition that affects different body systems and could reasonably be expected to produce many of [Plaintiff's] alleged symptoms, such as widespread pain, excessive sleepiness, and episodes of fatigue. . . . The decision needs to evaluate this impairment and the impact it has on [Plaintiff's RFC].

(Tr. at 133.) Despite these clear deficiencies in the ALJ's original decision, the ALJ in the present determination did no more than acknowledge Plaintiff's EDS as a severe impairment at step two. He did not expressly evaluate the impact of Plaintiff's EDS at step three, in assessing Plaintiff's RFC, or indeed at any step of the sequential analysis. The ALJ assigned little weight to Dr. Spanos' opinions.[7] Despite this, the ALJ did not obtain evidence from a

---

[7] The ALJ relies on Dr. Spanos' one-time statement that Plaintiff may be misdiagnosed with EDS to support his dismissal of that doctor's opinions and even the overall effects of EDS on Plaintiff's ability to work. (See Tr. at 23, 24.) However, the ALJ omits the context of Dr. Spanos' statement. After learning from Plaintiff that she potentially had a family member with Marfan Syndrome, Dr. Spanos suggested further genetic testing to determine whether Plaintiff's condition was Marfan rather than EDS. (Tr. at 1490.) Notably, both EDS and

medical expert to fill what he ostensibly perceived as an evidentiary gap in assessing the nature and severity of Plaintiff's EDS, which she contends is the most limiting of her impairments. Thus, the ALJ's decision continues to suffer from the same deficiencies as the Appeals Council noted with respect to the original decision. Ultimately, given the ALJ's failure to adequately address Plaintiff's EDS, including failing to consider Listing 14.06, remand is required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for a Judgment Reversing the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 30th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

Marfan Syndrome are multi-systematic, genetic disorders primarily affecting connective tissue, and Dr. Spanos specifically stated that one of these conditions occasionally "can mimic the other." (Tr. at 1490.) See also "Ehlers-Danlos syndromes and Marfan syndrome," https://www.ncbi.nlm.nih.gov/pubmed/18328988 (last visited August 29, 2019).